JORDAN LAW GROUP
PATRICK W. JORDAN (Bar No. 52115)
pwj@pjordanlaw.com
CHRISTOPHER J. OHLSEN (Bar No. 236475)
cjo@pjordanlaw.com
1010 "B" Street, Suite 320
San Rafael, California 94901
Telephone: (415) 459-9865
Fax: (415) 459-9871

Attorneys for Plaintiff
MEDIC AMBULANCE SERVICE INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| MEDIC AMBULANCE SERVICE INC.,<br><br>   Plaintiff,<br><br>   v.<br><br>UNITED EMS WORKERS, AFSCME LOCAL 4911,<br><br>   Defendant. | **Case No. 2:17-cv-01859-KJM-KJN**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD**<br><br>**Date:** October 20, 2017<br>**Time:** 10:00 A.M.<br>**Courtroom:** 3, 15th floor<br>**Judge:** Kimberly J. Mueller<br><br>**Petition to Vacate Filed:** September 7, 2017 |

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.   Background of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.   The Arbitrator's Decision and Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    C.   Contract Provisions Involved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.   The Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    B.   The Award was Based on The Arbitrator's Own Sense of Industrial Justice because She Created a Prospective Precedent in Violation of the Explicit Contractual Language of CBA Section 5.2 Requiring the Grievance be Resolved without Setting Precedent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    C.   By Using Past Practice to Limit the "Hours/Shifts" Language of Section 11.6 to Mean Only Shifts, The Arbitrator Exceeded Her Authority Because She Violated CBA Section 5.1, CBA  Section 25.3, and CBA Section 25.4 of the Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF AUTHORITIES

**Page**

## CASES

Major League Baseball Players Association v. Garvey
  532 U.S. 504, 509, 121 S. Ct. 1724, 1728 (2001) .......................... **11**

United Paperworkers Intern. Union v. Misco, Inc.
  484 U.S. 29, 38, 108 S. Ct. 364, 371 (1987) ............................. **11**

Pacific Motor Trucking Co. v. Automotive Machinists Union
  702 F.2d 176, 177 (9th Cir. 1983) ..................................... **12, 13**

Bruno's, Inc. v. United Food & Commercial Workers Intern. Union, Local 1657
  858 F.2d 1529, 1531 (11th Cir. 1988) .................................. **12, 13**

Garvey v. Roberts
  203 F.3d 580, 588-89 (9th Cir. 2000) .................................. **12, 13**

United Food & Commercial Workers Union, Local 1119 v. United Markets, Inc.
  784 F.2d 1413, 1415 (9th Cir. 1986) ................................... **12**

Drummond Coal Co. v. United Mine Workers of America District 20
  748 F.2d 1495, 1499 (11th Cir. 1984) .................................. **12**

Concourse Associates v. Fishman,
  399 F.3d 524, 526 (2nd Cir. 2005) ..................................... **12**

Hawaii Teamsters and Allied Workers Union, Local 996 v. United Parcel Service
  241 F.3d 1177, 1181 (9th Cir. 2001) ................................... **12-13**

United Steelworkers of America v. Enterprise Wheel & Car Corp.,
  363 U.S. 593, 597 (U.S. 1960) ......................................... **12**

Stead Motors v. Auto Machinists Lodge No. 1173
  886 F.2d 1200, 1205 n.6 (9th Cir. 1987) ............................... **13**

Cleveland elec. Illuminating Co. v. Utility Workers Union of America
  440 F.3d 809, 813 (2006) .............................................. **14**

PSC Custom, LP v. United Steel…Local No 11.770
  763 F.3d 1005, 1011 (8th Cir. 2014) ................................... **14**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF AUTHORITIES**

**Page**

Anheuser-Busch Inc. v. Beer Drivers, Local Union No. 744
   280 F.3d 1133, 1144 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15, 16**

Midwest Steel & Iron Works Co.,
   71 Lab. Arb. Rep. 1235, 1237 (Nutt 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

George Watts & Sons, Inc. v. Tiffany & Co.
   248 F3d 577, 581 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**16**

Aggregate Industries-Northeast Region, Inc. v. Teamsters Local Union No. 42,
   762 F.Supp.2d 285, 297 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**

**STATUTES RULES AND REGULATIONS**

29 U.S.C. § 185(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **11**

4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This case is before the Court on Plaintiff Medic Ambulance Service Inc. ("Plaintiff" or the "Company") motion to vacate an arbitration award issues under the Collective Bargaining Agreement ("CBA") between the Company and United EMS Workers, AFSCME Local 4911 ("Defendant" or "Union"). This Court should vacate the award because the Arbitrator disregarded the plain language of the CBA. An arbitrator may not write his or her own notion of fairness or industrial justice into a CBA; nor should, this Court uphold a decision that disregards the parties' express written agreement.

On June 11, 2017, Arbitrator Portia Igarashi issued an arbitration award that set a prospective precedent in violation of the CBA's plain language that the grievance should have been resolved without setting precedent. The Arbitrator further removed language of the contract through finding a past practice which violated several explicit restrictions of her authority under the CBA. As evidenced by her opinion, the award was based on her own notion of industrial fairness. The parties CBA states, "The arbitrator or Federal Mediator shall have no power to add to, or subtract from, or otherwise modify any provision of this agreement." Arbitrator Igarashi's Award"subtracts from" the CBA and her decision must be vacated.

## II.   STATEMENT OF FACTS

### A.   Background of the Case

Issues before this Court concern the Arbitrator's failure to honor (1) the express language of the CBA regarding remedial restrictions and (2) the use of past practice.. The issue concerns "mandation" a bargained for method of scheduling employees to come into work to fill gaps in the schedule.

Medic is an emergency medical transport company and is the sole provider of ambulance services throughout Solana County excluding Vacaville. As such Medic has a contractual

5
**MEMORANDUM OF POINTS AND AUTHORITIES**

obligation with the County to have enough staff available. But sometimes employees get sick injured, or quit and there are gaps in coverage. "Mandation" allows Medic to call in an employee to work on short notice. The ability to mandate is limited by a 72 hour notice requirement, employees are selected in order of reverse seniority, and mandation may only happen to an employee once every two pay periods. (See **Exhibit A** at Section 10.10 attached to the Petition filed on September 7, 2017).

The incident leading to the grievance occurred on March 31, 2016 when an employee Robin Hutson ("Hutson") demanded to be released from a mandation when there were two other open uncovered shifts on the same day.  Hutson found a coworker Andrew Fink ("Fink") to cover her mandated shift, but Fink had also requested from Medic, through a bidding process available on the Company's scheduling software, to cover the other open shifts that day. Medic took the position it had the right to approve of who would work the shift as it always had and that the mandated employee could be held to cover if there were any open hours during the time she had been mandated, even if she offered a replacement. Medic relied on language in CBA Section 11.6 that provides that mandation is available to fill "hours/shifts." (See **Exhibit A** at Section 11.6 attached to the Petition filed on September 7, 2017) Although Medic refused to relieve Hutson from the shift, it did find her a coworker willing to swap shifts so that she did not have to work during the hours that she sought relief. Immediately thereafter, Medic removed the shift identifiers from notification emails to Employees who were mandated; instead, Medic provided the hours that the employee was expected to work with no specific reference to a shift when mandating.

The Union grieved the issue on April 15, 2016. It alleged:

> The Employer needs to follow the CBA when assigning Mandatory Shifts.  On 4/1/16 it became evident the Employer decided to unilaterally implement a new interpretation of the applicable CBA article 10.10 for Mandatory Shifts, as well as the way in which the

6
**MEMORANDUM OF POINTS AND AUTHORITIES**

> Shift is assigned/handed out, while also not allowing for found coverage, or another individual the opportunity to voluntarily bid on the Shift mandated to another employee. (See **Exhibit B** at p. 5 attached to the Petition filed on September 7, 2017)

Medic and the Union engaged in Step One of their grievance procedure. Medic took the position that it need not relieve a mandated employee who had found a substitute if there would still be open hours during the hours of the mandated shift. The Union insisted the mandated employee be relieved and that the change in the mandation emails from shifts to hours violated an established past practice. Medic denied the Union's grievance at Step One.

On May 21, 2016 the Union made a timely request to move the grievance to Step Two of the grievance procedure. Section 5.1 of the CBA provides that Medic needed to schedule a Step Two meeting within five business days. Medic did not schedule the Step Two meeting. Vice President James Pierson ("Pierson") testified that he did not get an extension of the deadline in writing from the Union because he was distracted by the birth of his second son. Further he thought he had an oral agreement for the extension from Union Representative Casey Vanier ("Vanier") for an extension. Section 5.2 of the CBA requires any such extension be in writing.

**B.     The Arbitrator's Decision and Award**

The Arbitrator's Decision and Award favored the Union on all issues identified by the Arbitrator. As to the grievance procedure timing violation, the Arbitrator held,

> After considering all of the evidence of record, I find that the Employer failed to meet the requirements of CBA Section 5.1 and 5.2, in that it failed to schedule a Step 2 meeting within five (5) business days and that although it claims that there was a verbal extension, the CBA requires that any extension be in writing. I find that Vice President Pierson's claim that he thought a verbal agreement was sufficient is contrary to the language in the CBA. The Union's claim that the Employer failed to comply with the grievance procedure is AFFIRMED. The grievance is GRANTED and shall be resolved on the basis of the opposing party's last stated position without setting precedent pursuant to the CBA. (See **Exhibit B** at p. 9 attached to the Petition filed on September 7, 2017.)

7
**MEMORANDUM OF POINTS AND AUTHORITIES**

Despite the fact that the Arbitrator stated <u>the</u> grievance shall be resolved without setting precedent, she then exceeded her authority and set a precedent. The Arbitrator does not address the meaning of "without setting precedent" in any way; instead, the Arbitrator did the opposite of not setting precedent. She issued the following decision:

> The Union's Grievance is GRANTED.
> The Employer is ORDERED
> 1.  To cease and desist from any further violations of the CBA in the manners described above.
> 2.  To include shift identifiers in emails notifying employees of mandated shifts. And,
> 3.  To send a clarifying memorandum to all bargaining unit members notifying them that the Employer will resume including shift identifiers in emails notifying employees of mandated shifts.
> (See **Exhibit B** at p. 16-17 attached to the Petition filed on September 7, 2017)

**C.  Contract Provisions Involved (See Exhibit A to the Petition filed on September 7, 2017)**

**5.1 Grievance Procedure**

> A.  The purpose of the grievance procedure is to facilitate a timely means of adjustment by the Employer and the Union following a prompt investigation and thorough discussion of any dispute arising from the interpretation or application of any terms of this agreement and/or disputes concerning working conditions, benefits, or wages.
>
> B.  Employees should attempt to resolve problems with their immediate supervisor prior to resorting to the grievance procedure. **Any agreement reached between a supervisor and an employee shall not be considered to be a precedent setting agreement**, with a copy provided to the Union at the time of settlement. No agreement between supervisor and employee shall in any way conflict with the terms and provisions of this Agreement.
> **[Emphasis Added]**

**Grievance Procedure Outline**

**Step One**

> The Employee or the Union through its steward shall submit the

Grievance in writing to the Administrator or VP of Operations (VPO) within ten (10) business days of the occurrence giving rise to the grievance. Within ten (10) business days of receipt of the grievance notice, a Step 1 meeting shall be scheduled. The Administrator or VPO will give his/her answer in writing within ten (10) business days after such meeting. **Grievances resolved at this step shall not be precedent setting. [Emphasis Added]**

"Occurrence" is the date when the grievant learned of the event that is subject of the grievance or the effective date of discipline or discharge.

"Meeting" shall be defined as either an in person meeting, or if mutually agreeable, via telephone conference.

### StepTwo

If the procedure in Step One fails to resolve the grievance then, the grievance shall be submitted to the President or his/her designee within five (5) business days of receipt of the Step One denial, the parties shall schedule a meeting within five (5) business days. The President or his/her designee shall respond, in writing, within five (5) business days from the date of the Step 2 meeting.

### Step Three

In case of failure of the parties to settle the grievance at Step Two the Union shall be entitled to request that the grievance be referred to arbitration or Federal Mediator within five (5) business days from the Unions receipt of the Employer's Step Two response and shall request a list of seven (7) arbitrators from the Federal Mediation and Conciliation Service (FMCS). Within ten (10) calendar days from the receipt of the list from FMCS, the parties shall select an arbitrator by the process of alternately striking names from such list. The party to strike such names shall be on a rotating basis. The arbitrator's decision shall be final and binding on the Employer, the Union, and the employee(s) involved. The cost of the arbitration shall be divided equally; the costs include the arbitrator's fees and expenses, hearing room cost, and the cost of a transcript.

**The arbitrator or Federal Mediator shall have no power to add to, or subtract from, or otherwise modify any provision of this Agreement. [Emphasis Added]**

### 5.2 Time Limits

By mutual agreement between the Union and the Employer, the time limits of any step of the grievance procedure may be extended

9
**MEMORANDUM OF POINTS AND AUTHORITIES**

and this extension **must be confirmed in writing** within the specified time limits, **In the event either party fails to respond to the grievance within the time limits specified, the grievance shall be resolved on the basis of the opposing party's last stated position without setting precedent. [Emphasis Added]**

### 10.10 Mandatory Assignment of Overtime

    A.    <u>Mandatory shift</u>

    1.    When the Employer is unable to fill an available shift through any other means other than a mandatory assignment to an Employee, Mandatory Assignments will be made in reverse seniority order. Employees will be *given* a minimum of seventy two (72) hours notice prior to mandatory shift. The Employer shall continue to strive to fill the mandated shift up to twelve (12) hours prior to the start of the shift requiring mandation. In the event the Employer is successful in filling the shift the Employer shall immediately communicate with the mandated employee and not require the employee to work the mandated shift.

    2.    When a Mandatory shift has been assigned, the Employee will be moved to the bottom of the list. If an Employee refuses to accept a mandatory shift assignment they will be subject to the following progressive discipline 1st offense = Written Warning 1st 2nd offense = One (1) day suspension, 3rd offense = Termination.

    3.    A continuing database of employees assigned mandatory shifts will be maintained by the Employer and available for review at all times, to ensure reverse seniority is maintained by assignment with the following guidelines:

i.    No employee will be mandatoried more than one shift per two consecutive pay period block of time.
1.    12-houremployees shall have a 12 hour break before and after the mandated shift;
2.    24-hour employees mandated to a 12-hour unit shall have a 6-hour break prior to the12 hour shift.
ii.    An employee cannot be assigned a mandatory shift that will interfere with his their regular scheduled shift.

If an Employee must refuse a mandatory shift assignment due to an extenuating circumstance the Employee must provide documentation of said circumstance to the Employer and at the sole discretion of the Employer may pardon employee from discipline. A refusal will not exclude the employee from mandatory shift assignment rotation.

10
**MEMORANDUM OF POINTS AND AUTHORITIES**

**11.6    Filing Open Shifts**

A.    **Available hours/shifts shall be defined as those hours/shifts, which are open, Available hours filled as follows: [Emphasis Added]**

1. Part time employees;
2. Full time employees on the available list by seniority;
3. Any employee willing to accept the shift;
4. Any means available to the Employer (i.e" non-bargaining unit management personnel);
**5. Mandatory call back in reversed order of seniority, [Emphasis Added]**

**25.3    Modifications to the Agreement**

No addition to, alteration, modification, or waiver of any term, provision, covenant of condition or restriction in this agreement shall be valid, binding or of any force or effect unless mutually agreed to, in writing, by the Employer and the Union.

**25.4    Complete Agreement**

This Agreement sets forth the parties' agreement and understanding with respect to the matters referred to herein. The parties acknowledge that during the negotiations which resulted in this Agreement, each party had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement.

**III.    LEGAL ARGUMENT**

**A.    The Standard of Review**

A district court has jurisdiction to vacate a labor arbitration award when an Arbitrator "strays from interpretation and application of the agreement" and dispenses his own brand of industrial justice. 29 U.S.C. § 185(a); <u>Major League Baseball Players Association v. Garvey</u>, 532 U.S. 504, 509, 121 S. Ct. 1724, 1728 (2001). The award is reviewed to determine whether the Arbitrator infused the contract with meaning other than that expressed by its plain language. <u>United Paperworkers Intern. Union v. Misco, Inc.</u>, 484 U.S. 29, 38, 108 S. Ct. 364, 371 (1987). A court may enforce an arbitration award only if the award represents "a plausible interpretation

11
**MEMORANDUM OF POINTS AND AUTHORITIES**

of the contract in the context of the parties' conduct." Pacific Motor Trucking Co. v. Automotive Machinists Union, 702 F.2d 176, 177 (9th Cir. 1983) (internal citation omitted).  However, an arbitration award that directly contradicts the parties' contract language cannot be upheld as a reasonable interpretation of the contract.  Id.; see also Bruno's, Inc. v. United Food & Commercial Workers Intern. Union, Local 1657, 858 F.2d 1529, 1531 (11th Cir. 1988).  An Arbitrator exceeds his power when he issues an award that fails to "draw its essence" from the contract.  Id.

Over the years the Ninth Circuit has refused to uphold arbitral awards that do not represent a plausible interpretation of the contract Garvey v. Roberts, 203 F.3d 580, 588-89 (9th Cir. 2000); Pacific Motor Trucking Co., supra, 702 F.2d 176, 177; United Food & Commercial Workers Union, Local 1119 v. United Markets, Inc., 784 F.2d 1413, 1415 (9th Cir. 1986).  Other circuits have refused to enforce arbitral awards that are "irrational" or do not represent a "colorable justification for the outcome reached."  See e.g. Drummond Coal Co. v. United Mine Workers of America District 20, 748 F.2d 1495, 1499 (11th Cir. 1984); Concourse Associates v. Fishman, 399 F.3d 524, 526 (2nd Cir. 2005).  As noted in United Parcel Service, supra, these formulations are another means to describe circumstances where the arbitrator's decision did not draw its essence from the contract, or the arbitrator dispensed his own brand of industrial justice.  241 F.3d at 1183.

**B.    The Award was Based on The Arbitrator's Own Sense of Industrial Justice because She Created a Prospective Precedent in Violation of the Explicit Contractual Language of CBA Section 5.2 Requiring the Grievance be Resolved without Setting Precedent**

Courts perform the important function of ensuring an arbitrator's decision "draws its essence" from the collective bargaining agreement and the arbitrator did not use the arbitral forum to "dispense his own brand of industrial justice." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (U.S. 1960).  An arbitrator may not "ignore the plain language of the contract" or simply follow his own "whims and biases."  Hawaii Teamsters

and Allied Workers Union, Local 996 v. United Parcel Service, 241 F.3d 1177, 1181 (9th Cir. 2001) (quoting Stead Motors v. Auto Machinists Lodge No. 1173, 886 F.2d 1200, 1205 n.6 (9th Cir. 1987); Garvey v. Roberts, 203 F.3d 580, 588-89 (9th Cir. 2000). Nor may an arbitrator ignore language in the contract that limits her authority to add to, subtract from or modify provisions in the contract being interpreted. United Parcel Service 241 F.3d at 1181. Arbitrators cannot dispense their own brand of industrial justice when a contract clearly limits the Arbitrator's authority. Pacific Motor Trucking Co., 702 F.2d at 177; United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S. Ct. 1358, 1361 (1960). An Arbitrator "does not have unfettered discretion" and "may not impose a remedy that directly contradicts" the contract's express language. Bruno's, 858 F.2d at 1531.

There is no dispute that the Arbitrator found Medic failed to meet the timing requirements for Step Two of the grievance procedure contained in CBA Section 5.1. She found such because the extension was not in writing pursuant to the requirement of CBA Section 5.2. In addition to the writing requirement, the Section also requires that if there is a failure to submit a timely response then the grievance must be resolved on the basis of the opposing parties last stated position "without setting precedent." The parties bargained for this limited remedy. The parties could have imposed the penultimate penalty which was adopting the last stated position of an opposing party as the final result as if it were an award. They did not. Instead, the opposing party would "prevail" as to the instant dispute but it would have no precedents value or construed as an interpretive award to be applied in the event a similar dispute arose in the future. Stated another way the delinquent party was not precluded from arguing in support of this interpretation should a similar dispute be presented by way of a new and separate grievance. Instead of issuing a decision that provided the parties the remedy they bargained for, the Arbitrator exceeded her authority

with her prospective precedential decision.[1]

The Union will likely argue Medic has waived any right to claim that the Arbitrator's decision shall not be precedent setting through the issue stipulation in this matter. The respective issue stipulation is attached. (See **Exhibit A** p. 6:1-25, 7:1-25, and 8:1-11 attached to the Declaration of Patrick Jordan) "Although a court is usually the proper venue for decisions about arbitrability, if the parties 'clearly and unmistakably' submit the issue to the arbitrator 'without reservation' then the parties have waived their right to have a court make the decision" <u>Cleveland elec. Illuminating Co. v. Utility Workers Union of America</u>, 440 F.3d 809, 813 (2006) The parties did not "clearly and unmistakably" submit authority to the Arbitrator to ignore the "without setting precedent." language of Section 5.2 "without reservation." Even the Union's lawyer stated in his opening after entering the stipulation:

> And the union's position here is simple: That because the employer failed to comply with the Step 2 time requirements and did not get an extension in writing from the union, this grievance should be resolved in the union's favor, without setting a precedent as set forth in that provision of 5.2. And the union, therefore, requests that the arbitrator first address that issue, and the arbitrator agrees that the arbitrator grant the grievance **<u>without having to even get to the merits of the dispute.</u>** [Emphasis Added] (See **Exhibit A** p. 14:5-14 attached to the Declaration of Patrick Jordan)

Stipulation or not, neither side in this case waived the restriction on the potential Arbitrator's remedy in this case. The remedy should have granted without setting precedent pursuant to CBA Section 5.2. Courts that contemplate stipulations granting extra authority to arbitrators distinguish those CBAs that have explicit remedial restrictions such as the present CBA and those that do not. <u>PSC Custom, LP v. United Steel…Local No 11.770,</u> 763 F.3d 1005, 1011 (2014) There are no

---

[1] While Medic concedes the Arbitrator did order the grievance resolved without setting precedent, she provides no explanation of why she then issued her prospective decision (See **Exhibit B** at p. 9 attached to the Petition filed September 7, 2017) An Arbitrator cannot feign to "interpret" a contract provision that is unambiguous. <u>Morgan Services, Inc. v. Local 323, Chicago and Central States Joint Board</u>, 724 F.2d 1217, 1222 (6th Cir. 1984) While Arbitrators have broad authority to interpret contractual language; here there is no indication that the Arbitrator did any interpretation of the "without setting precedent" language of Section 5.2, she just ignored it.

14

**MEMORANDUM OF POINTS AND AUTHORITIES**

facts supporting the proposition that the parties "clearly unmistakably," "without reservation" granted the Arbitrator the ability to ignore the remedial restriction contained in Section 5.2; in fact, the CBA is filled with several provisions that explicitly prohibit such.  Further, there is no evidence the employer agreed the matter could be turned into an interest arbitration whereby the arbitrator's interpretation would be treated as a prospective, precedent-setting award.

The parties also agreed in CBA Section 5.1 that an Arbitrator, "shall have no power to add to, or subtract from, or otherwise modify any provision of this Agreement." By subtracting the "without setting precedent" language of CBA Section 5.2, the Arbitrator has exceeded her authority through her prospective decision. The parties further bargained and agreed to limit the authority of the Arbitrator through CBA Section 25.3, which provides:

> No addition to, alteration, modification, or waiver of any term, provision, covenant of condition or restriction in this agreement shall be valid, binding or of any force or effect unless mutually agreed to, in writing, by the Employer and the Union.

The Arbitrator interpreted language requiring "a writing" by finding that Medic's claimed oral extension for the Step Two grievance failed because of the writing requirement of CBA Section 5.2. But then she ignoring the writing requirement of CBA Section 25.2 forbidding a "waiver of any term…" without a writing signed by both parties.  The Arbitrator exceeded her authority because she had no authority to modify or waive the non- precedent setting remedy of CBA Section 5.2 without the required writing mutually agreed to by both parties in clear and express terms.

**C.  By Using Past Practice to Limit the "Hours/Shifts" Language of Section 11.6 to Mean Only Shifts, The Arbitrator Exceeded Her Authority Because She Violated CBA Section 5.1, CBA  Section 25.3, and CBA Section 25.4 of the Agreement.**

The parties' agreement dictates the Arbitrator's authority, and the parties may agree to limit that authority.  Anheuser-Busch Inc. v. Beer Drivers, Local Union No. 744, 280 F.3d 1133, 1144 (7th Cir. 2002) (parties may "preserve their right to challenge decision when the Arbitrator

15
**MEMORANDUM OF POINTS AND AUTHORITIES**

has reached out and rendered a decision that strays beyond his delegated authority.") The Arbitrator violated the long-standing industrial principle that an Arbitrator's award should "not grant a party that which it could not obtain in bargaining." Midwest Steel & Iron Works Co., 71 Lab. Arb. Rep. 1235, 1237 (Nutt 1979). See George Watts & Sons, Inc. v. Tiffany & Co., 248 F3d 577, 581 (7th Cir. 2001) ("People who want their Arbitrators to have fewer powers need only provide this by contract").

The Arbitrator improperly used past practice in this case to subtract "hours" from the "hours/shifts" language of Section 11.6 of the CBA in violation of the limitations placed on her authority by the CBA. The five options listed in Section 11.6 represent a five step hierarchy of how hours may be filled. (See **Exhibit B** p. 181:14-25, 182:1-25, 183:1-11attached to the Declaration of Patrick Jordan) Resorting to Mandation is Step 5 of Section 11.6. (Id. at 183:12-21) The Arbitrator concluded, "The Employer violated the CBA and established past practice by eliminating shift identifiers from emails informing employees of mandated shifts." (See **Exhibit B** at p. 9 attached to the Petition filed September 7, 2017) By deciding that established past practice requires that mandation emails use shift identifiers, the arbitrator has removed the hours language from the contract and has left only mandation of shifts.[2]

The arbitrator should not have utilized past practice in this way to remove the employer's option to cover hours through mandation because of the explicit language of Sections 5.1 and 25.3 and 25.4. "To be binding a trade custom or usage must be so well known, uniform, long established and generally acquiesced to in so as to induce the belief that the parties contracted

---

[2] The Union will probably argue that the Arbitrator interpreted the "shifts/hours" language of Section 11.6 to mean that "shift/hours" only means shifts based on testimony from Medic Witnesses Jimmy Pierson and Brian Meader that hours and shifts mean the same thing or are synonymous. The Arbitrator actually made the opposite interpretation by stating, "Therefore I find that Articles 10.10 and 11.6 of the CBA apply equally to hours and shifts." (See **Exhibit B** at p. 14-15 attached to the Petition filed on September 7, 2017) If the Articles apply to hours and shifts then the employer should have the right to mandate on the basis of hours or a specific shift. As discussed above the CBA past practice of using shifts in email notifications should never have been allowed to limit the hours language of the CBA especially considering the Zipper clauses in Section 5.1 and 25.3.

16
**MEMORANDUM OF POINTS AND AUTHORITIES**

1  with reference to it, nothing in the contract to their contrary." <u>Aggregate Industries-Northeast
2  Region, Inc. v. Teamsters Local Union No. 42</u>, 762 F.Supp.2d 285, 297 (2010). There are at least
3  three sections of the contract that are contrary to a finding of past practice. The "hours/shifts"
4  language of Section 11.6 explicitly allows for mandation to be used for shifts and hours. The
5  zipper clause of Section 5.2 also prevents the arbitrator from "subtracting" the "hours" language
6  from Section 11.6. Further the second zipper clause of Section 25.3 prevents the Arbitrator from
7  modifying Section 11.6 in the absence of a written agreement by the parties. "There would be no
8  need to prevent the arbitrator from 'adding to, subtracting from, modifying or changing in any
9  way the terms of the Agreement' unless the parties clearly intended to prevent the arbitrator from
10 relying on what the dissent calls 'post signing conduct' when interpreting the agreement."
11 <u>Anheuser-Busch Inc. v. Beer and Soft Drink Local 744</u>, 280 F.3d 1133, 1141 (2002). The
12 combined effect of both the limitation of Arbitrator authority in the arbitration clause in Section
13 5.1 and the zipper clause in Section 25.3 should have prohibited the Arbitrator from deviating
14 from the clearly defined and thoroughly negotiated written contract. <u>Id.</u> The parties agreed in
15 Section 25.4 that this is the complete agreement. By ignoring the restrictions on her authority, the
16 Arbitrator not the parties has modified the contract and has exceeded her authority through the
17 use of past practice to prevent Medic from mandating hours or shifts.

**IV.   CONCLUSION**

In conclusion, the Arbitrator exceeded his authority by crafting an award that unmistakably contradicts the plain language of the Collective Bargaining Agreement negotiated by and agreed upon by Medic and the Union. The parties' contract terms do not have to please an Arbitrator. Rather, the Arbitrator's role is to neutrally enforce and give effect to those terms. Here, the Arbitrator substituted his own sense of industrial justice for the parties' bargained-for remedy. The Arbitrator's award ignored the parties' agreement with no explanation for such.

The law does not allow such an award to stand.  Because the Arbitrator's award did not draw its essence from the parties' contract, it must be vacated.

Dated: September 9, 2017  JORDAN LAW GROUP

By:  /S/ Patrick W. Jordan

Attorney for Medic Ambulance Service Inc.

# PROOF OF SERVICE

**RE: Medic Ambulance Services v. United EMS Workers, AFSCME, Local 4911**
**Case No. 2:17-CV-01859-KJM-KJN**

**I, CHRISTOPHER J. OHLSEN declare that**

I am employed in the County of San Rafael, State of California, I am over the age of eighteen years and not a party to the within entitled action. My business address is 1010 B St., Ste 320, San Rafael, CA 94901

On September 9, 2017, I caused the following:

- **PLAINTIFF'S NOTICE OF MOTION AND MOTION TO VACATE ARBITRATION AWARD**
- **MEMORANDUM OF POINTS AND AUHTROITIES IN SUPPORT OF PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD**
- **DECLARATION OF PATRICK W. JORDAN IN SUPORT OF MOTION TO VACATE ARBITRATION AWARD**

to be ECF filed on the interested party in said case and delivered to Western Attorney Services for service by hand delivery on September 11, 2017 to:

United EMS Workers, AFSCME, Local 4911
7275 National Dr., Unit F
Livermore, CA 94550

Manuel A Boigues
Weinberg Roger& Rosenfeld
1001 Marina Village Parkway, Suite 200
Alameda, CA 94501

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed at San Francisco, California.

Date: September 9, 2017                    By:  /S/ Christopher J. Ohlsen

---

19
**MEMORANDUM OF POINTS AND AUTHORITIES**